21-1559 Southern Iowa Todd Roehr v. Sun Life Assur.Co.of Canada Mr. Brady. Thank you ma'am. Please the court. Brad Brady. I represent the appellant Dr. Todd Roehr in this appeal of the termination of his long-term disability benefits by Sun Life. Sun Life determined in 2007 that Dr. Roehr's hand and finger tremors prevented him from safely performing the essential duties of an anesthesiologist and from that point forward received consistent evidence of the exchanged tremors that were characterized as intermittent and slight on many occasions were permanent tremors that precluded him from performing his job safely. In 2017 Sun Life seized upon and mischaracterized a single treatment record from Dr. Roehr's provider that in which on one occasion he did not observe tremor and concluded that these permanent tremors that had been going on for 10 years 12 years at that stage had somehow vanished. What about the new evaluations from the additional doctors that Sun Life relied on who reviewed the records? How do those play into his burden of establishing his disability month by month? His burden of course is to produce information as requested by Sun Life not on his own your honor but is that is that I'll ask you what since you raised that is that undisputed that well I guess I can ask your opposing counsel but it's your understanding that that's not something that anybody's disagreeing about? Well I can only quote the policy language judge which says that that after the initial grant of benefits then the burden of the of the claimant is to produce information as requested by Sun Life. Sun Life requested information from Dr. Roehr and his providers constantly throughout the course of this case and Dr. Roehr always provided it. He provided the same information from the outset that he had throughout the entire course of the case so there's no question that that happened to back to your question a good one about what is the significance of the two additional evaluators in this case. The first evaluation which was by Dr. Potts and was the basis for initial termination decision was really based upon a false premise there's really no other way to look at it. Everybody agrees that an anesthesiologist cannot safely thread catheters and do spinal taps etc with tremors, fine tremors, slight tremors though they may be, intermittent though they may be. The question here is did the tremors go away that is really the only significant medical question in this case. The answer to that is that they did not. Dr. Potts looked at a January 17, 2017 record of Dr. Wolczyk, Dr. Roehr's long-time treater where no tremor was observed and concluded from that as did the Sun Life claims examiner Margaret Frank that the tremors had disappeared. If you look at I think it's at 2396 and 2418 those are the relevant sections of Dr. Potts report and Margaret Frank's denial letter. The sole and overriding reason that the benefits were terminated was a belief that the tremors were gone. Now that was a frankly that was an unreasonable determination in itself but because the tremors had been determined consistently to be permanent, intermittent that is occasionally they didn't show up. For example as early as 2007 at the outset of this case Dr. Roehr showed up at his treatment provider, the neurologist at that time and he didn't have tremor that day. The tremors did not go away and so when Dr. Potts said pointing only to that January 17, 2017 note said the tremors are gone. He is no longer impaired. He no longer has impaired manual dexterity and of course the disability here is a very narrow one. This is a very narrow question here that makes it unusual. The only question is, is there evidence that he has impairment and the ability to fine manipulate such that it isn't safe for him to be doing these very delicate tasks and there's no room for error on this issue. Counselor you seem to be subtly shifting the burden from your client and that then there's some life's offer to reconsider if your client would provide proof of an independent exam. All great questions Judge Gratz and I'm sort of slowly winding my way there. Once Dr. Potts and Margaret Frank determined that the tremors had disappeared, Dr. Roehr went back to his treatment provider and was evaluated and his treatment provider said observe the tremors, describe them, characterize them and Dr. Roehr then sent that record to Sun Life following the initial decision before the final decision. In addition Sun Life obtained a second evaluator, that's Dr. Honig whose opinion is frankly inconsistent with that of Dr. Potts. Dr. Honig gets the report including the January 2017 report and says Dr. Roehr still has tremor. He has a movement disorder. He said I can't tell you anything else about it because he wasn't seeing a neurologist, a somewhat different issue that I'll get to but he still has a movement disorder. Now at that stage Judge, Sun Life's basis for terminating the benefits had just fallen apart. The tremors persisted, they were there and their own doctor said I can't tell you anything more about this including whether Dr. Roehr can return to work as an anesthesiologist unless he is first evaluated. That does seem to be where he's at. He says there needs to be additional evaluations and by that time there's already been a decision that's been made and they say but if you present more evidence we'll consider it. Does that cure the problem? Judge, we're now at the reconsideration stage and I appreciate that Judge Erickson that it jumps a little bit ahead in the chronology. I know chronologically we're jumping ahead because I want to lead into the real question that I've got. If you look at what's going on in here there are a number of theories as to what may have been going on. There was at first the idea that there may have been a Parkinsonism but because of the lack of progression that seems unlikely. It seems that there's an assertion that there was an essential tremor, a tremor that cannot be explained any other way. Then there's a claim that in intense conversation it appears that the tremor lessens and therefore it may be psychogenic. It doesn't really matter. All tremors are still covered. The only tremor that wouldn't be covered is if there was some evidence of malingering. At this point nobody's made any allegation that that's going on. All you really have is just this one statement that said I failed to observe a tremor at some point. That's it. That is really it. That is the entirety of the medical evidence on that issue. It was wrong and it became obvious that it was wrong when Dr. Rohr was subsequently examined and a tremor was detected. To move ahead to I think your question about what then happened and how does that speak to the reasonableness of some life's decisions. Before the final review, Moorestone, the reviewer, had in his hands a report that said the tremors persisted and a report from his own experts saying yes they do and I can't tell you anything unless you first examine it. Now the only reasonable course for some life at that stage was to reinstate the benefits and if it wanted to do so follow their own expert's advice and have Dr. Rohr evaluate it. Perfectly reasonable thing to do. They had a right to do so under the policy and that would have been a very sensible thing to do. Instead Moorestone launches into a really what I have described as it's three it covers three pages of single space material where he constructs this notion that Dr. Rohr never had tremors that he's been faking them all along or exaggerating them. He learned how to do it from his dad and he as an officer of the corporation he knew that he was going to have to pay for these benefits pretty soon so he wanted to get his application. It's really wild speculation judge and I have no explanation for that other than bias. It's just very difficult to understand why he did that. Certainly it wasn't reasonable and it wasn't a defensible position. Sunlight concedes in the briefing below that Moorestone never should have said those things that it was wrong. Mr. Brady during the course of Dr. Rohr's disability there's back and forth the communication about the fact that he's only seeing the family doctor that then early on Sunlight wanted him to see some folks he didn't want to see a psychiatrist and a neurologist a movement disorder specialist. Was there ever anything that could be a called or an express request on the by Sunlight to Dr. Rohr that was then declined under the terms of this policy? Never your honor never did Sunlight ever request I think in fairness to Sunlight I think Sunlight didn't know whether Dr. Rohr should get other treatment or not. In 2013 in the midst of this entire process Sunlight determined that they didn't really want a further evaluation because they really expected the evaluation to yield the same result. They thought that a neurologist would examine him would confirm the presence of tremors that find this a critical question of fine manipulation skill would still be answered no and that that they wouldn't learn anything more than they were learning from Dr. Walsh. But no to answer your question and it's a very good one Sunlight never said never suggested to Dr. Rohr that his treatment was inappropriate until the final treatment decision. That is a flawed process for several reasons most importantly Sunlight under the regulations the code of federal regulations and we cite to them had a duty before reaching their final duty to give if they relied upon a new expert they had to provide a copy of that report to Dr. Rohr and if they relied upon the if that report reflected a new rationale as it did they had to tell him the new rationale was. That's in 29 CFR section I think it's 2603 503 H I think it's one and two and it's a long citation your honor and I apologize for rambling on it but it's cited in the brief it's yeah 29 CFR 2560.503 parens 1 parens H parens 4 contains two requirements number one if you have a new report you have to give it in advance to the claimant so they can respond to the claim and number two if you have a new rationale you have to give it to the claimant so they can respond to that rationale they just didn't do that here. So when Dr. Rohr was told in December by Sunlight we're terminating you because your tremors are gone that's the fairest reading of Dr. Poxon the only reading of Margaret Frank's letter a termination letter. He then went out and got proof that his that his tremors persisted then they they really completely you know moved the goalpost back they completely blindsided him saying well no number one you never really had tremors all along we think you've been faking it but number two yeah you uh uh you didn't get appropriate treatment a notion that he never mentioned until the final treatment decision that's a violation of this is a violation of fundamental fairness judge and as well as the code of federal regulations so we we cite uh and we got a little bit you know we cited I think the McConnell case which is a an Alabama district court decision which analyzes this precise issue in this precise context and uh Sunlight's only response was uh to refer to your this court's decision in midget which was based upon an entirely different statute regulatory scheme that that uh the regulatory scheme here went into effect January 1 of 2017 so the regulation that required Sunlight to do this uh to to give the report and uh and give the rationale in that report it was in it was in effect at the time that this claim was decided um I'm not sure how much you want me to speak to this issue but that we have a bit of a debate with Sunlight concerning whether what what you know regular regulation was in effect it's clear to me that the regulation requiring the delivery of the report and the rationale was in effect at the time of the decision here and as the McConnell court noted that this regulatory scheme has its own uh applicability provisions that they're in section I think 4p of uh of the regulation and they they really specifically provide that decisions like this on termination of ongoing benefits in this time within this time period are governed by uh the regulations that I just discussed by the 503 regulations so um I really kind of jumped ahead and moved a bit along along in the outline judge but uh and I to return to it uh please interrupt me your questions are much more useful than my comments uh tremors are involuntary muscle disorders and to most people they're an embarrassment or an annoyance and by the way most of the time there is no known cause of tremors nor is there a known cure for tremors aside from the symptomatic uh medication relief that that those who suffer from it periodically take they aren't a big deal except if you're a radio or an anesthesiologist who's trying to thread a catheter to an infant or you know insert a needle into the narrow interstitial spaces of the vertebrate avoid paralyzing someone and safety patient safety is what drove Dr. Rohr to stop practicing medicine that sort of concern is it should be commended uh you know not criticized uh this court in uh in uh I think the Torres decision uh looked at similar safety issues in evaluating whether someone could safely perform this specific application uh that 630 circuit in Kramer which was an ob-gyn case where uh an ob-gyn doctor really had difficulty using both of her arms as is required for delivery of infants uh you know Mr. Brady you've um you've extended over your um time uh so we'll turn we'll turn it over to I didn't leave any rebuttal my bad I wasn't paying any attention I got well thank you for your we'll we'll swing back to you to see if there's anything you need to respond to after after we hear from Ms. Wong. Thank you. Good afternoon your honors may it please the court Jenny Wang on behalf of the Appley Sun Life Assurance Company of Canada. As a claims fiduciary Sun Life had a duty to strictly enforce the written terms of this ERISA plan and that included the group policy's proof of loss provisions and in response to your question Judge Kelly the duty to provide ongoing proof of disability always remained with Dr. Rohr not just when Sun Life specifically asked for it and I would direct the court to the appendix at page 58 which contains this provision it says Sun Life will pay you an LTD benefit up to the maximum benefit period if you provide proof that you continue to be totally or partially disabled and that is followed by the sentence you need to provide proof when Sun Life asks for it but it doesn't say you need to provide proof only when Sun Life asks for it. But accepting proof as acceptable to continue benefits for 10 years doesn't he have the don't you have some obligation to give them some notice that well we're now looking for something different? Right your honor that's a very good question but I would point out that this claim didn't fail because there was some specific piece of information missing this claim failed because the proof that Dr. Rohr provided and the information that Sun Life obtained from esteemed neurologists failed to demonstrate disability and the burden to substantiate disability always remained with Dr. Rohr. It didn't lessen over time by virtue of Sun Life's approval of this claim in prior years and it didn't somehow shift to Sun Life. Now in carrying out its duties under this plan Sun Life had a right to seek opinions from neurologists especially since Dr. Rohr hadn't seen one in 10 years. Dr. Potts and to that to that point it and I understand your point that Sun Life can request more information maybe they look over this record and say we've just got some questions about whether this disability really is still in effect but a review of records by a neurologist seems different to me than an examination of Dr. Rohr by your neurologist. Why is the former sufficient and why didn't Sun Life have some obligation to at least get some more actual evidence documentary evidence from a physician with an actual examination? Well when when Dr. Potts came back with an evaluation that said look I've reviewed the entire record I'm the only one to I'm the only neurologist to have done so in a decade and what I'm seeing tells me that there is not proof of disability here there's not an obligation for Sun Life to then go ahead and say well I think we need another examination on top of that. It would have been a different story had Dr. Potts come back and said well there isn't sufficient information here for me to be able to make a determination as to whether these tremors are impairing. He didn't say that he said this evidence to me doesn't demonstrate impairment from fine manual dexterity. So and nothing so I guess that that to me seems like a difference but everyone else was noting through the notes there's a tremor it's mild there's a tremor he can't do he can't do his own occupation. So then there's a doctor several years later that just looks at the record and just simply disagrees and says I just don't see it. Is that new information medical information that Sun Life can rely on to say that I mean essentially he's saying all along you never had enough and so is it your position that Sun Life was in the in the it was within their right to seek reimbursement for all of the payments that Dr. Ward received? Well let me clarify your honor Sun Life is not seeking the payment of any benefits at this point. I know I know you I understand that but I think initially I initially they did after they saw that note from the treating physician. I'm just curious I don't know how to to put this into the evaluation just one doctor's disagreement with every record on the tremor before whether he's right or wrong I don't know how that fits into a disability scheme and who needs to do what next. Let me let me try to clarify that your honor there does not need to be evidence in the record demonstrating that the tremors improved in order for Sun Life's decision to have been reasonable. In order for it to be reasonable there just has to be a change in the information that is available to Sun Life some significant change in the record that was before the administrator and that absolutely existed when Dr. Potts highly qualified neutral third-party neurologist came back and said the evidence here doesn't demonstrate disability. So it really when Dr. Rohr argues there's no evidence that his tremor improved or disappeared that really isn't the question to be examined here. The question is was there a reasonable basis for Sun Life to reach the conclusion that it did and when two board certified neurologists both come back and say there's not enough information here to demonstrate disability that was absolutely reasonable and let me speak to the lone treating physician who was supporting Dr. Rohr's disability for 10 years his family practitioner. It wasn't a reliance on a single note in January of 2017 that formed the basis of this decision. When Margaret Frank came on the scene in 2014 and looked at the record what she saw was Dr. Rohr was going to his year for routine checkups. He was continuing to take Parkinson's disease medications that every single neurologist he had ever seen told him he shouldn't be taking because he doesn't have Parkinson's disease. She saw a record in 2014 when Dr. Rohr went to see his family practitioner and Dr. Walchik said he's got mild hand tremors they're generally well controlled there are no new issues. The next year he follows up with his family practitioner again in 2015 and again he notes very minimal tremor today no new problems tremors can are controlled he's been very active this summer in Colorado. 2016 he goes back to his family practitioner this time it's not even for a tremor at all he just sees him for a cough there's no reference to any tremors. Then in January of 2017 he goes back into the family practitioner for a routine physical and at that time he says no focal findings or movement disorder noted it's a normal physical exam follow up with me in 12 months. And in this context this is the context in which Ms. Frank ordered a review by Dr. Potts. So Dr. Potts takes a look at the record and not only you know before he finalizes his report he contacts the family practitioner Dr. Walchik he says let me discuss this with you and the two of them reach an agreement on a number of points. First they agree Dr. Rohr doesn't have Parkinson's disease he doesn't have any of the physical signs of that condition including bradykinesia which is slowness of movement he doesn't have rigidity he doesn't have a masked face Dr. Walchik agrees he doesn't have any of these characteristics of the condition. Dr. Walchik also agrees there's little to no worsening of Dr. Rohr's condition over time. And Dr. Potts sends him a letter summarizing their discussion and asks him if you agree with my summary of our discussion please sign this. Dr. Walchik signs it in December of 2017 and says it's accurate. Then the claim is denied and in February of 2018 a couple of months later Dr. Rohr goes to see Dr. Walchik again this time post and now Dr. Walchik says contrary to what he had told Dr. Potts just a couple of months earlier he does have Parkinson's and he has demonstrated the characteristics of that condition including bradykinesia and cogwheeling rigidity and that these findings were noticeable over time. So now you have opinions from Dr. Walchik the only person supporting disability that are directly contrary to what he had told Dr. Potts a couple of months earlier and inconsistent with his records from prior years. And so when Mr. Doan is confronted with two neurologists who concur that the evidence in the record is insufficient to demonstrate disability and he's confronted with a lone treating physician's opinion that were demonstrably unreliable he really couldn't simply ignore that and continue to pay the claim. But he gave Dr. Rohr a final opportunity to submit the proof that he was required to submit if he were to qualify for additional benefits. He offered an IME at Sun Life's expense by a specialist and Dr. Rohr flatly refused. But does it matter that that offer was after he was already denied or terminated from his benefits right? It was. Doesn't that matter? I mean it seems to me if I'm understanding the party's representation of the policy had they asked him to do that before termination and he refused Sun Life would be in a different would be in a pretty strong that'd be pretty strong position to say you're not following up with what we've requested. But once you've denied him it doesn't that would you agree that's a different posture for Sun Life? It is a different posture your honor and I guess it's more to the point that you know Mr. Brady's point that Mr. Doan was somehow biased in his administration of this claim. If he were biased and he were out to deny this claim on any basis that he can he wouldn't have put his decision at risk by offering an IME. At that point at the time of the final denial there were two neurologists who said disability wasn't supported. You had an unreliable treating physician opinion. The record was there to demonstrate the reasonableness of the decision. Mr. Doan wouldn't have put that decision on the line by offering Dr. Rohr another opportunity with an examining physician. Now all that's I'm sorry your honor. Why not right? I mean you've got 10 years where you've paid it on certain evidence. That evidence hasn't really changed that much. You say that's a significant change. You've got people that are just looking at the record and now you're saying well he wouldn't jeopardize the decisions he's already made because he might find out the truth may be different than what the decision is that he's made. How is that reasonable? I mean why wouldn't he say now what I'm going to do now is invoke the policy. I'm going to require you to go out and get an independent medical examination with a neuropsychologist, a neurologist of our choosing. That was an option certainly your honor that was available to Sun Life but Sun Life was not obligated to invoke that policy provision because the burden was always with Dr. Rohr and let me be clear he made it very clear he was very up front with Sun Life from the beginning of the I'm done with them and I'm happy taking Parkinson's disease medications even though his neurologist told him he shouldn't and I'm just going to follow up with my treating physician. So this wasn't a situation where you know there was discussion by Mr. Brady about a sharing requirement under the new regulations. By the way that's completely a wrong analysis. The McConnell the Alabama district court in McConnell simply got it wrong when it held that these new regulations that took effect in 2017 applied to claims filed before 2018. In fact another district court here in California in the Kay versus Hartford case ruled exactly the opposite. It's based on the preamble to the new regulations which basically says these regulations requirements including the sharing requirement of peer review reports before a final denial they only apply to claims filed before April 1st 2018. And when these changes in the regulations took effect it was hailed in the preamble to the regulations that this was a major new requirement. So the McConnell court simply got it wrong. The point being there was no obligation to share this you know Dr. Honig's report with Dr. Rohr before a final decision on denial. All of this goes to a conflict of interest which the Supreme Court in the Glenn case said conflict of interest doesn't come into play. It reaches the vanishing point when the administrator has taken active steps to reduce any potential bias. Sun Life did that here. It went to third party companies to select qualified physicians to review this claim. That third party selected Dr. Potts selected Dr. Honig. Sun Life also had a person that was completely uninvolved in the initial claim determination handled the claim on appeal a completely new set of eyes took a look at it. When steps like these have been taken to to reduce any potential for bias conflict of interest such as supposedly not sharing reports which wasn't even required under the regulations they don't tip the scales. And in fact this very court in the Joaquin case Joaquin 531 F3rd 575 said conflict of interest factors alleged bias. They may tip the scales but only if the other factors are not closely balanced. Here those factors were not closely biased. There were two neurologists opinions who unanimously said disability isn't supported. The family practitioner's opinion was demonstrably unreliable. Under these circumstances Sun Life had no alternative but to stop paying the claim. All that's needed is a reasonable basis to affirm the district court and I would submit the judgment should be affirmed. Thank you for your time. Thank you for your argument. Mr. Brady do you need one minute to respond to anything that opposing counsel has said? Apparently I'm not capable of doing anything in one minute your honor but I'll just a couple of comments. We'll keep you to it. Thanks. At page 64 of the appendix the requirement was after benefits are initially awarded the benefits continue unless the claimant does not provide proof that you continue to be partially totally or partially disabled as requested by Sun Life. That's the test. Otherwise how would he know whether he was the burden or not? Dr. Potts never addressed the fundamental question here. What are the essential duties of anesthesiology and can they be performed? He had some broad language about impairment but when you read his report and focus on page 29 to 2396 his conclusion it's really all about the tumor vanishing. That's the only reason it made sense. Even if Margaret Frank's decision to terminate benefits based upon that misreading of the note was reasonable. Once the tremors came back and once Sun Life's doctor said he has tremors and you need to evaluate him it's just unreasonable at that stage to move forward with the termination. It's just unreasonable. He simply should have... Thank you Mr. Brady. Yeah we appreciate the argument from both counsel. It's been helpful and we'll take the matter under advisement.